UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JONATHAN GROTH and ROBERT WILLIAM JOHNSTON, On behalf of THEMSELVES and All Others Similarly Situated,<br><br>    *Plaintiffs,*<br><br>v.<br><br>GRAND CENTRAL PARTY RENTAL, INC.; and KEITH KRANZ<br><br>    *Defendants*. | CASE NO. 3:12-cv-1305<br><br>COLLECTIVE ACTION<br><br>JURY TRIAL DEMANDED<br><br>Judge Nixon<br><br>Magistrate Judge Knowles |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01(d), the parties submit this Proposed Initial Case Management Order.

**1. Jurisdiction.**

Plaintiffs Jonathan Groth and Robert William Johnston, on behalf of themselves and all other similarly situated, have filed this suit under the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"). The cases raises a question of federal law, giving the Court subject matter jurisdiction under 28 U.S.C. §§ 1331 & 1343.

The parties do not dispute the Court's jurisdiction over this matter or the propriety of venue in this Court. Defendants have received service of process.

**2. The Parties' Theories of the Case.**

    **a. Plaintiffs' Theory of the Case**

Plaintiffs Jonathan Groth and Robert William Johnston brought this FLSA collective action against Grand Central Party Rental, Inc., and Keith Kranz to challenge their practice of

1

refusing to compensate Plaintiffs, and those similarly situated, for all time actually worked. Additionally, Plaintiffs challenge Defendants' practice of failing to include piece-rate work in calculating the amount of overtime owed to employees. Plaintiff Groth also challenges Defendants' termination of his employment, which was in retaliation for Plaintiff Groth's attempts to assert his rights under the FLSA.

Defendant Grand Central Party Rental, Inc. operates two distinct lines of business—(1) party rentals (tables, chairs, tents, linens, flatware, etc . . .), and (2) inflatable rentals. When employees work on the party rental side of the business, they are typically paid on an hourly basis. In contrast, when employees work on the inflatable side of the business, there are paid on a piece-rate basis.

Under the FLSA, employers are required to compensate employees for all time actually worked, productive and non-productive. 29 C.F.R. § 778.318. In violation of this requirement, Defendants have, as a matter of policy, regularly failed to compensate Plaintiffs and similarly situated individuals for all hours actually worked. Such violations include, without limitation: failing to compensate employees for work related to inflatable deliveries that customers timely cancel; failing to compensate employees for attempted inflatable pick-ups that prove impossible for reasons outside the employees' control; and failing to compensate employees for delivering and setting up small party rental orders that are combined with an inflatable order.

Defendants have also violated the FLSA by failing to account for its employees' piece-rate work when calculating overtime payments. Because Plaintiffs and similarly situated employees of Grand Central Party Rental were paid based on a combination of hourly and piece-rate work rates, the FLSA requires Defendants to calculate employee overtime "at rates not less than one and one-half times such bona fide rates applicable to the same work when performed

2

during nonovertime hours." 29 U.S.C. § 207(g)(2).  Defendants, as a matter of policy, have violated this requirement by failing to pay overtime for piece-rate work, regardless of how many total hours employees worked in a given week.

Finally, Defendants have violated Plaintiff Groth's rights under the FLSA by terminating his employment for attempting to assert his rights under the statute.  On December 4, 2012, Plaintiff Groth retained counsel to represent him in any potential FLSA claims he might have against Defendants.  Then, between December 4 and December 7, 2012, Plaintiff Groth reached out to several current and former employees of Grand Central Party Rental to ask about their experiences and notify them that their rights under the FLSA may have been violated.

On Friday, December 7, 2012, Defendant Kranz called Plaintiff Groth into his office and terminated Plaintiff Groth's employment.  Defendant Kranz told Plaintiff Groth that he knew Plaintiff Groth was considering filing a lawsuit, and that Defendant Kranz would make Plaintiff's life a "living hell" if he did.  On the separation notice Defendant Kranz presented to Plaintiff Groth, the stated reason for the termination was that Plaintiff had kicked an employee in the groin on November 30, 2012.  This justification is merely pretextual, as Plaintiff Groth had not kicked any employee in the groin on November 30, or at any other point during his employment.  The explanation listed on the separation notice was merely a pretext for Defendants' retaliatory discharge of Plaintiff Groth.

**b. Defendants' Theory of the Case**

Grand Central employees Groth and Johnston typically worked the majority of weekdays on the party rental side and worked the majority of their bounce house hours on weekends.  Time sheets and delivery schedules show that Plaintiffs did a mix of work on both weekdays and weekends.  As a matter of company policy, Grand Central Party paid its

3

employees differently depending on whether the employee were doing party rental work or bounce work.

In 2001, Grand Central Party bought a local company called Astro Jump, the company was franchised, licensed out of California. The company was renamed Astro Events of Nashville and licensed with the State as Astro Events Nashville, d/b/a Grand Central Party Rental, Inc. At the time of the purchase, Astro employees who worked weekends were paid by the piece. As the company grew and employees were added, the employees wanted to stick with the jump pay rather than hourly in that their money was greater. The company looked at changing the hourly pay years ago, but was met with anger from the employees over the change. It was allowed to stay in, but employees could choose wherever they made the most money. It is estimated that the company would save approximately 15% to 20% in pay for delivering inflatables on the clock over jump pay while increasing efficiency.

In February, 2012, the relationship with Astro Jump was severed. The name Astro Events Nashville was allowed to expire with the State in April of 2012 when the entity would come under Grand Central Party Rental, Inc., Grand Central Bounce. Grand Central Bounce is just a designation on the company website. In September of 2012, the employees were told that jump pay would no longer be available starting in 2013. Again, the Plaintiffs were not happy with the change the Defendants being the most vocal.

The Plaintiffs made deliveries where they had inflatables on the truck, but clocked in and never claimed jump pay. At times, the Plaintiffs would clock in and claim jump pay, both on the same day and on other days, the Plaintiffs did not clock in, but took jump pay. The Plaintiffs used the rule to their advantage to increase pay when it benefited them the most. For example, on May 20th, 2012, Plaintiff Groth ran a truck with three deliveries and three pickups. The truck

was loaded with jumps only, a total of four (4). He clocked in that day from 8:02 a.m. to 12:26 p.m. and then again from 4:33 p.m. to 9:32 p.m.

The employee's records will show that they would choose jump pay only when it benefited them the most and in most cases, even if the Plaintiffs were not in overtime, the Plaintiffs were making well over overtime. For instance, Plaintiff Groth worked 248 days for 2012 and of those 248 days, he actually clocked in 232 days. Other employees never chose to go on jump pay and just clocked in since they did not want to deal with the paperwork. Again, it was only there to benefit the employees because loads had grown larger over the years and at time, additional employees who clocked in, had to be added to a truck which allowed Grand Central Party to calculate the hours. The schedules also allowed the Defendants to determine the hours fairly and accurately.

While working on the bounce house side, the Plaintiffs were compensated for complete set ups and take downs at the rate of $11.00 for large inflatables and $3.00 for smaller inflatables, games and accessories. The total number of days that Plaintiff Groth claimed jump pay was 16 days, although the Plaintiff claimed jump pay a total of 18 times. Another example is on June 8th, 2012, Plaintiff Groth clocked in for the day working from 7:07 a.m. to 4:42 p.m. for a total of 9 hours and 35 minutes for $175.31 including 9 hours and 35 minutes and overtime at $18.75 an hour. On that day, Plaintiff Groth clocked out at 4:42 p.m. and left for three pick ups at 5:00 p.m. The truck was back and employees clocked out at 11:32 p.m. The Plaintiff claimed jump pay for $155.00 or $24.53 an hour. Again, the Plaintiff's regular overtime pay is $18.75. The Plaintiffs were well compensated for their work.

On Friday nights, the customer service representative would call on customers to confirm the order and get further information. If an order is going to be cancelled, many are cancelled at

5

that time. Trucks are loaded on Friday nights on the clock and unloaded on Monday mornings on the clock. A same day order cancel, the customer is still legally obligated to pay the company.

Furthermore, there were certain occasions when a client would combine inflatable orders and pay rental orders. In those circumstances, a party rental order was for $100.00 or more. The Plaintiffs would receive piece rate compensation for setting up or taking down those supplies. The Plaintiffs made more money on the piece rate than they did on overtime and again, the piece rate/jump pay was only in place to benefit the employees. The Plaintiffs could choose where they made the most money. Another example is Plaintiff Groth made a delivery on June 23rd, 2012 to Lake Providence Church. The order included three 10 x 10 and two 20 x 20 Sierras tents. Those five tents can be put up easily in an hour or less. Plaintiffs claimed five deliveries and five pick ups on the pay sheet for a total of $110.00 or $55.00 an hour as opposed to the $18.75 an hour overtime pay. In that situation, the Plaintiff was paid $36.67 an hour.

The Plaintiffs could choose between the hourly or the jump pay, whichever was the greatest pay they chose and it was an option that had been extended to all employees. Not all employees chose both, some chose the hourly plus time and a half, others chose both.

On Saturday, December 1, 2012, Plaintiff Groth sent a text message to Grand Central Operations Manager, Brent Elsey, asking to take the following week off from work. Mr. Elsey responded by texting the same day approving the leave request. He also responded that Mr. Keith Krantz would like to speak with him first. At that time, the company was already looking to have a meeting with Mr. Groth because of his changing erratic behavior with the other company employees. Mr. Groth refused to meet with Mr. Krantz.

6

Case 3:12-cv-01305   Document 13   Filed 02/11/13   Page 6 of 10 PageID #: 88

A meeting was finally had with Plaintiff Groth, who appeared with Mr. Keith Krantz, President, Ms. Kim McClean, General Manager. At no time did anyone tell Mr. Groth that he would make his life a living hell. A separation notice stated the circumstances of the separation that the Plaintiff kicked an employee in the groin, dropping the employee to his knees on November 30, 2012. Plaintiff Groth's erratic behavior began in September, 2012 and worsened as time went along. He was withdrawn, moody, and at times belligerent. In early November, 2012, the company received a letter from a customer complaining of Mr. Groth's behavior and unprofessionalism. Shortly thereafter, he appeared at work one day with his teeth knocked out. The Defendants never found out, nor would he discuss with the Defendants, the personal problems that he was dealing with.

There are three other employees who witnessed the attack and the Plaintiff was fired the morning of December 3, 2012. Violence in the workplace or any other institution has become a terrifying event and manual policy is that violence will not be tolerated in the workplace and is a reason for separation.

While the company had looked at the jump pay many times and wanted to change it, the company only left it in place because the employees wanted it. One of the main reasons the company had decided to discontinue jump pay in 2013 was because of the difficult economy and the opportunity to save 15% to 20% in pay for inflatables while increasing efficiency. Grand Central Party has always had an open door policy. If the Plaintiffs had any problems with the bounce pay, they could have come and discussed it at any time as they did whenever they needed to borrow money. The Plaintiffs worked the pay to whatever benefited them the most as Grand Central Party records will show. Grand Central Party did not terminate the Plaintiff Groth for retaliatory discharge as alleged.

The Plaintiffs' pay rates were as follows:

Jonathan Groth
5/1/07 to 5/26/08 $11.00 per hour
5/26/08 to 5/9/10 $11.75 per hour
5/9/12 until termination $12.50 per hour

Robert Johnston
2010 to 5/9/12 $10.00 per hour
5/9/12 to leaving $11.35 per hour

Caleb McClellan
7/21/08 to 5/9/10 $9.50 per hour
5/9/10 until termination 4/25/11 $10.95 per hour

Grand Central Party, Inc. did not violate FLSA, nor is Mr. Keith Krantz, individually, or personally liable.

1. **Initial Disclosures and Staging of Discovery.**

    a. **Pre-Discovery Disclosures**

    The deadline to exchange information specified by Fed. R. Civ. P. 26(a)(1) is **February 25, 2013.**

    b. **The Parties' Proposed Discovery Plan**

    The parties agree that Plaintiffs may serve up to thirty (30) interrogatories on Defendants and Defendants may serve up to thirty (30) interrogatories on Plaintiffs.

    All fact discovery, including depositions, shall be completed by **August 2, 2013**.

    No motions concerning discovery shall be filed until after the parties have conferred in good faith and are unable to resolve their differences. The deadline for filing discovery-related Motions is August 12, 2013.

8

2. **Joinder and Amendments.**

Plaintiffs shall have until **April 5, 2013** to move to join additional parties and/or move for amendments to the pleadings. Defendant shall have until **April 22, 2013** to move to join additional parties and/or move for any amendments to the pleadings

3. **Motions seeking Court-Supervised Notice.**

Plaintiffs shall file their Motion to Conditionally Certify Class and Facilitate Notice by no later than **April 5, 2013**.

4. **Expert Discovery**

Plaintiffs shall submit any expert reports by no later than **August 30, 2013**. Defendants shall submit any expert reports by no later than **September 27, 2013**. Expert depositions shall be completed by **October 25, 2013.**

5. **Motions for Decertification.**

Should the Court conditionally certify a class of individuals pursuant to 29 U.S.C. § 216(b), Defendants shall have until **September 13, 2013** to move the Court to decertify Plaintiffs' claims.

6. **Dispositive Motions.**

Dispositive motions shall be filed on or before **October 4, 2013**. Responses to dispositive motions shall be filed within twenty-one (21) days after service of the motion. Replies to responses shall be filed within fourteen (14) days after the filing of the response.

7. **Alternative Dispute Resolution.**

The parties intend to engage in informal settlement and alternative dispute resolution discussions.

8. **Estimated Trial Time: to last approximately three days. Plaintiffs have demanded a jury trial.**

This case is set for jury trial on February 28, 2014, before the Honorable John T. Nixon. The pretrial conference is set for February 7, 2014, at 10:00 a.m.

It is so ORDERED.

Entered this the ___th day of February, 2013

_____
E. CLIFTON KNOWLES
United States Magistrate Judge


APPROVED FOR ENTRY BY:				Dated: February 6, 2013



/s/ David W. Garrison
**DAVID W. GARRISON**
**SCOTT P. TIFT**
**SETH M. HYATT**
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN 37201
(615) 244-2202
dgarrison@barrettjohnston.com
stift@barrettjohnston.com
shyatt@barrettjohnston.com

*Counsel for Plaintiffs*



/s/ George J. Duzane (swp by David W. Garrison)
George J. Duzane
Duzane, Kooperman & Mondelli
603 Woodland Street
Nashville, TN 37206
615-259-1214
gjduzlaw@comcast.net

*Counsel for Defendants*

10